IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT KNOXVILLE

JANUARY 1997 SESSION



**FILED**

**October 31, 1997**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | NO. 03C01-9512-CC-00387 |
| | ) | |
| Appellee | ) | COCKE COUNTY |
| | ) | |
| v. | ) | HON. REX HENRY OGLE, JUDGE |
| | ) | |
| KATHY BALL, | ) | (Solicitation of First Degree Murder |
| | ) | and Sentencing) |
| Appellant | ) | |
| | ) | |

FOR THE APPELLANT

Thomas V. Testerman
301 East Broadway
Newport, Tennessee 37821

FOR THE APPELLEE

John Knox Walkup
Attorney General and Reporter
450 James Robertson Parkway
Nashville, Tennessee 37243-0493

Eugene J. Honea
Assistant Attorney General
450 James Robertson Parkway
Nashville, Tennessee 37243-0493

Alfred C. Schmutzer, Jr.
District Attorney General
Sevier County Courthouse
125 Court Avenue, Suite 301-E
Sevierville, Tennessee 37862

James B. Dunn
Assistant District Attorney General
339-A East Main Street
Newport, Tennessee 37821

OPINION FILED:_____

AFFIRMED

WILLIAM M. BARKER, JUDGE

OPINION

The Appellant, Kathy Ball, appeals as of right her conviction and sentence for solicitation of first degree murder. She argues on appeal that she was improperly convicted of an offense not contained in the indictment and that her sentence was excessive.

After a careful review of the record, we affirm the Appellant's conviction and sentence.

On September 20, 1993, the Appellant spent the afternoon with her husband, Harlan Ball at her parents' residence in Whitesburg, Hamblen County. Her parents arrived home sometime between 5:00 and 6:00 p.m. and her mother began preparing dinner. The Appellant's brother, Tim Fox, and his girlfriend, Betty Weston[1], also stopped by the Hamblen County residence and they visited with the Appellant until dinner was served. Ball and the Appellant ate dinner with the Appellant's parents and shortly thereafter they drove back in separate cars to their home in Cocke County.

Later that evening, Tim Fox and Betty Weston stopped by the Balls' mobile home. While Fox and Weston were there, the Appellant asked Ball to go to the Food City grocery store to buy a few soft drinks. She further suggested that he ask Tim Fox to accompany him. Shortly after Fox and Ball left, Betty Weston told the Appellant that she was going to the store to buy milk for her baby.

When Fox and Ball returned from Food City, they both got out of the car and approached the mobile home. Ball carried the bottles of soda and walked slightly ahead of Fox. Suddenly, Ball felt something poke him in the back. According to Ball's testimony, Fox grabbed him by the arm and quickly turned him around. Fox then stabbed Ball in the chest with a knife. After the stabbing, Fox ran to his getaway car, driven by Betty Weston.

Ball staggered into his mobile home where he told the Appellant that her

_____

[1]At the time of trial, Betty Weston had married Tim Fox and changed her name to Betty Weston Fox. To avoid confusion, we have used the name Betty Weston throughout this opinion.

brother had stabbed him. The Appellant placed a towel over the wound to stop the bleeding and she took him to a nearby hospital. In the emergency room, the treating physician realized that Ball had been stabbed through the heart. As a result of the immediate medical attention and further treatment, Ball survived the almost fatal wound.

The evidence introduced at trial revealed that the Appellant was having an extra-marital affair with her neighbor and co-worker, James Murray, approximately three months before the solicitation. During this time, the Appellant complained that Ball had threatened her and their two children with violence. Thus, on the day of the stabbing, she caused a restraining order to be filed against Ball. Ball testified that he had no prior knowledge of his wife's affair or the restraining order, and he denied all allegations of abusive behavior.

The evidence further revealed that the Appellant and Murray had contemplated marriage sometime before the stabbing. However, for some unknown reason, the Appellant never left or divorced her husband. Instead, she asked her brother, Fox, to kill him. As payment for the murder, she gave Fox five hundred ($500) dollars on September 20, 1993, and she promised to pay him another forty-five hundred ($4500) dollars after she received payment under Ball's two life insurance policies.[2] The Appellant also promised to give Fox her husband's car after the murder.

Betty Weston testified that the Appellant and Fox planned the murder of Ball when they met at their parent's home on September 20, 1993. According to their scheme, the Appellant planned to ask Ball to stop at the White Supermarket on his way home from her parents' house. Fox planned to be waiting for Ball at the supermarket where he would ask Ball for a ride to the Rankin Community. Upon arrival in Rankin, Fox planned to shoot Ball and make his getaway in a car driven by

_____

[2]Ball had one policy through his work valued at $20,000.00. Approximately one month before the stabbing, the Appellant had taken out another policy, valued at $13,350.00, on Ball. The Appellant was the named beneficiary in both policies.

3

Betty Weston. In spite of this plan, the Appellant never asked Ball to stop at the supermarket on his way home from her parent's house. Instead, she arranged for the murder to take place later that evening when Fox and Betty Weston stopped by the Balls' mobile home.

Approximately one week before the solicitation, Fox had made a previous attempt on Ball's life. At the Appellant's request, Fox had taken an electrical wire from the tail light of Ball's car and put it into the gas tank. Supposedly, this would cause the gasoline to explode when Ball turned on the ignition. Ball, however, discovered the wire and removed it before he started the car. The police were never contacted concerning this attempt on Ball's life.

The Cocke County Grand Jury indicted the Appellant for attempted first degree murder based upon the knife attack by Fox. After one mistrial, a jury convicted the Appellant of solicitation of first degree murder, a Class B felony. The trial court sentenced the Appellant, as a Range I standard offender, to serve eleven years in the Tennessee Department of Correction.

I.

The Appellant contends that her conviction for solicitation of first degree murder must be set aside because she was charged with attempted first degree murder, not solicitation to commit first degree murder. This issue is without merit.

The indictment charged that the Appellant "did unlawfully, intentionally, deliberately and with premeditation attempt to kill Harlan Ball, in violation of T.C.A. Section 39-12-101, and T.C.A. Section 39-13-202." At trial, the trial court instructed the jury on the law regarding attempted first degree murder, attempted second degree murder, attempted first or second degree murder by being criminally responsible for the conduct of her brother, solicitation of first degree murder, and solicitation of second degree murder.[3] The jury returned a verdict finding the Appellant guilty of

---

[3]No issue is raised as to whether or not there is an offense of solicitation of second degree murder in Tennessee, and such a determination is not required in this case.

solicitation of first degree murder.

In Tennessee, when an individual is accused of a crime, the State must give the accused adequate notice of the charged offense by specifying it in the indictment. See State v. Trusty, 919 S.W.2d 305, 309 (Tenn. 1996) (citing Tenn. Const. Art. I, § 9). "A defendant cannot be legally convicted of an offense which is not charged in the indictment or which is not a lesser included offense embraced in the indicted charge." See Trusty, 919 S.W.2d at 310 (citing State v. Lampkin, 619 S.W.2d 520 (Tenn. 1981); McLean v. State, 527 S.W.2d 76 (Tenn. 1975); State v. Morris, 788 S.W.2d 820 (Tenn. Crim. App. 1990)). A lesser offense embraced in the indictment can be either a "lesser grade or class" offense or a lesser included offense. See Trusty, 919 S.W.2d at 310.

In this case, the question on appeal is whether solicitation of first degree murder is a "lesser grade or class" offense or a lesser included offense of attempted first degree murder. We find that solicitation of first degree murder is a lesser grade or class offense of attempted first degree murder and, thus, was included in the indictment.

To determine whether an offense is a lesser grade or class of the indicted offense, we look to Tennessee Code Annotated. See Trusty, 919 S.W.2d at 310. In the Code, the Tennessee General Assembly has organized criminal offenses into different categories. For example, in sections 39-13-201 through 213, the General Assembly has divided criminal homicide into various grades including first degree murder, second degree murder, voluntary manslaughter, criminally negligent homicide, and vehicular homicide. In this arrangement, first degree murder is the highest grade of homicide with the other offenses being of lesser grade in descending order.

Similarly, the inchoate offenses listed in Tennessee Code Annotated sections 39-12-101 through 103 are divided into the grades of attempt, solicitation, and conspiracy. Ordinarily, criminal attempt is one classification lower than the actual

5

offense attempted, unless the attempted offense is a Class C misdemeanor. See Tenn. Code Ann. § 39-12-107(a) (1991 Repl.). Criminal solicitation is two classifications lower than the actual offense solicited, unless the solicited offense is a Class B or C misdemeanor. See Tenn. Code Ann. § 39-12-107(b). When the intended offense is first degree murder, however, the classification of criminal attempt and criminal solicitation is governed by Tennessee Code Annotated section 40-35-110 (1990). Attempted first degree murder, as charged in this case, is a Class A felony punishable by fifteen to twenty-five years imprisonment for Range I offenders. Solicitation for the same offense, however, is a Class B felony punishable by eight to twelve years for Range I offenders. This statutory classification demonstrates that solicitation of first degree murder is a lesser grade or class of attempted first degree murder.

We, therefore, find that the trial court properly instructed the jury on the lesser charge of solicitation of first degree murder, and affirm the Appellant's conviction.

II.

The Appellant next contends that her sentence is excessive. She argues that the trial court erred in applying enhancement factors (6), (12), and (15) to her sentence. See Tenn. Code Ann. § 40-35-114 (6), (12), and (15) (Supp. 1996). This issue is without merit.

Solicitation of first degree murder carries a sentence of eight to twelve years for Range I offenders. In this case, the trial court sentenced the Appellant to eleven years as a Range I standard offender after applying three enhancement factors and two mitigating factors. The trial court found that: (6) the injuries inflicted upon the victim were particularly great; (12) that the Appellant willfully inflicted bodily injury on another person; and (15) that the Appellant abused a position of private trust. See Tenn. Code Ann. § 40-35-114 (6), (12) and (15). With regard to mitigating factors, the trial court found that the Appellant did not have a prior criminal record and that she was instrumental in saving Ball's life after the stabbing. See Tenn. Code Ann. § 40-

35-113 (1990).

When an Appellant complains of his or her sentence, we must conduct a de novo review with a presumption of correctness. See Tenn. Code Ann. § 40-35-401(d) (1991). This presumption is conditioned upon an affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances. See State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The burden of showing that the sentence is improper is upon the appealing party. See Tenn. Code Ann. § 40-35-401(d) (Sentencing Commission Comments).

The minimum sentence within the range is the presumptive sentence. For Class B and C felonies, the trial court must start at the minimum sentence in the range and enhance the sentence as appropriate for any enhancement factors and then reduce the sentence within the range as appropriate for any mitigating factors. If there are no mitigating factors, the court may set the sentence above the minimum in that range. See Tenn. Code Ann. § 40-35-210 (1990). The trial court has full discretion to determine the weight given to each factor, as long as it does not violate the principles of the Sentencing Reform Act. Id. (Sentencing Commission Comments). "The weight afforded mitigating or enhancement factors derives from balancing relative degrees of culpability within the totality of the circumstances of the case involved." See State v. Moss, 727 S.W.2d 229, 238 (Tenn. 1986).

The Appellant contends that enhancers (6) and (12) are essential elements of criminal solicitation, and therefore, cannot be considered to increase her sentence. We disagree.

Enhancer (12) applies in cases where a defendant, during the commission of a felony, willfully inflicts bodily injury upon another person, or the actions of the defendant result in the death or serious bodily injury to a victim or a person other than the intended victim. See Tenn. Code Ann. § 40-35-114 (12) (Supp. 1996). In this case, the record supports the trial court's finding that the Appellant's willful actions resulted in bodily injury to the victim, Ball. Moreover, injury to the victim is not an

7

essential element of the crime of solicitation to commit first degree murder. To the contrary, the language of our solicitation statute indicates that neither physical contact nor bodily injury to a victim is necessary to find a defendant guilty of criminal solicitation.[4]

Tennessee Code Annotated section 39-12-102 (a) provides that "[w]hoever, by means of oral, written or electronic communication, directly or through another, intentionally commands, requests or hires another to commit a criminal offense, or attempts to command, request or hire another to commit a criminal offense, with the intent that the criminal offense be committed, is guilty of the offense of solicitation." Solicitation of first degree murder need not involve a completion of the intended crime or injuries to the intended victim. In this case, however, there is no doubt that the Appellant's solicitation resulted in serious bodily injury to Ball. We, therefore, conclude that the trial court properly applied enhancer (12) to the Appellant's sentence.

Turning now to the application of enhancer (6), we find that the trial court properly applied this enhancer to the Appellant's sentence. The trial court tracked the language of Tennessee Code Annotated section 40-35-114 (6) in finding that the personal injuries inflicted upon the victim, Ball, were particularly great. In this case, there is no dispute that Ball suffered extensive and near fatal injuries as a result of being stabbed in the heart. Moreover, as indicated above, those injuries are not essential to the offense of criminal solicitation.

This Court has previously held that enhancer (6) is not an element of solicitation of first-degree murder. See State v. Amy Renee Marcum, C.C.A. No. 03C01-9508-CR-00244 (Tenn. Crim. App., Knoxville, Sept. 25, 1996). Therefore, the application of enhancer (6) was proper.

We also agree with the trial court's finding that the Appellant abused a position

---

[4]See also State v. Trusty, 919 S.W.2d 305, 313 n.7 (Tenn. 1996)(stating that the inchoate offense of "attempted murder does not necessarily require either contact with the victim or bodily injury").

of private trust.  <u>See</u> Tenn. Code Ann. § 40-35-114 (15).  The Appellant argues that intra-spousal solicitation of first degree murder does not amount to an abuse of private trust between spouses.  We agree that the marital status between the Appellant and the victim alone is not enough to justify the use of enhancement factor (15); however, the facts of this case support the application of this enhancer.  The record demonstrates that Ball was retrieving soft drinks for the Appellant when he was stabbed by Fox.  The Appellant personally asked Ball to go with Fox to the White Supermarket to fulfill her request.  Clearly, she used her position as a cohabitating spouse to set up the resulting knife attack by Fox.  At that time, Ball was unaware of the Appellant's unfaithful behavior and he had no reason to distrust her or suspect that she was soliciting his murder.

We further find that the trial court correctly applied two mitigating factors pursuant to Tennessee Code Annotated section 40-35-13 (13).  The Appellant does not have a prior criminal record and she was instrumental in saving Ball's life after the knife attack.  Nevertheless, we defer to the trial court's finding that the enhancing factors and the heinous nature of this case outweigh those mitigating factors.  The trial court considered the totality of the evidence to determine that an enhanced sentence was proper for this Appellant.

Based on the evidence in the record, we conclude that the trial court properly applied enhancers (6), (12), and (15) and the two mitigating factors in ordering the Appellant's sentence.

Accordingly, we affirm the judgment of the trial court.


_____
WILLIAM M. BARKER, JUDGE


CONCUR:

9

_____
JOSEPH M. TIPTON, JUDGE


_____
CURWOOD WITT, JUDGE


IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT KNOXVILLE

JANUARY 1997 SESSION

FILED

October 31, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

STATE OF TENNESSEE,              )
                                 )

|                |     |                                                    |
|----------------|-----|----------------------------------------------------|
| Appellee,      | )   | No. 03C01-9512-CC-00387                            |
|                | )   |                                                    |
|                | )   | Cocke County                                       |
| v.             | )   |                                                    |
|                | )   | Honorable Rex Henry Ogle, Judge                    |
|                | )   |                                                    |
| KATHY BALL,    | )   | (Solicitation of First Degree Murder and           |
|                | )   | Sentencing)                                        |
| Appellant.     | )   |                                                    |

## CONCURRING OPINION

I concur in the results reached and most of the reasoning in the majority opinion. I doubt, though, that the legislature intended for solicitation to be a "lesser grade" of an attempt. I do not believe that the analysis used in State v. Trusty, 919 S.W.2d 305 (Tenn. 1996), to identify the separate grades of homicide easily carries over to the part of the criminal code listing the inchoate crimes -- attempt, solicitation and conspiracy. See T.C.A. §§ 39-12-101--103.

The similarity among the three inchoate crimes is that they are all crimes of preparation to commit crimes and do not depend upon the commission of the ultimate crimes intended. Otherwise, though, they address separate concerns that are not necessarily connected. For instance, prohibiting solicitation and conspiracy, as opposed to attempt, focuses on the fact that a greater menace to society is presented by criminals acting in concert than by one acting alone.

On the other hand, I believe the result reached in the majority opinion is correct because of the defendant's exposure to being criminally responsible for the acts of her brother. Pursuant to T.C.A. § 39-11-402(b), a person is criminally responsible for another's conduct if "[a]cting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense." (Emphasis added). Also, an indictment for a crime in Tennessee necessarily includes the

11

commission of an offense by both the defendant's own conduct and the defendant's criminal responsibility for another's conduct. See T.C.A. § 39-11-401.

The indictment and the evidence in the present case encompass the defendant's criminal responsibility for the conduct of her brother. This led to the trial court's charging the jury relative to both the defendant's criminal responsibility for her brother's conduct and the crime of solicitation. To me, the fact that criminal responsibility for the conduct of another includes the soliciting of another person to commit the offense renders solicitation to be a lesser included offense under the facts and the indictment in this case. See Howard v. State, 578 S.W.2d 83, 85 (Tenn. 1979).

Moreover, I think it is significant that the defendant essentially agreed with the trial court relative to instructing the jury on the offense about which she now complains. That is, when the trial court stated its intention to instruct on both attempt and solicitation, defense counsel responded, "That will be fine for the defense, Your Honor." The defendant's first complaint about solicitation is on this appeal. Under the position taken by the defendant in the trial court, there is no issue regarding surprise or improper notice by failing to specify the claim of criminal responsibility for another's conduct or the offense of solicitation. Thus, with the defendant having agreed to the jury considering the offense of solicitation, the fact that solicitation could be an included offense through the route of criminal responsibility for the conduct of another justifies the defendant's conviction being upheld.

_____
Joseph M. Tipton, Judge